# THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATHAN RAMAZZINI, | ) | 1:13-cv-00733 LJO GSA PC |
| | ) | |
| Plaintiff, | ) | ORDER REQUIRING PLAINTIFF TO |
| | ) | FILE AMENDED COMPLAINT OR |
| v. | ) | NOTIFY COURT OF WILLINGESS TO |
| | ) | PROCEED ONLY ON CLAIMS |
| | ) | FOUND TO BE COGNIZABLE |
| C/O EVANS, et al., | ) | |
| | ) | RESPONSE DUE IN THIRTY DAYS |
| Defendants. | ) | |

### I.  Screening Requirement

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

///

///

II.     **Plaintiff's Claims**

   A.     **Summary of Complaint**

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Salinas Valley State Prison, brings this action against correctional officials employed by the CDCR at Kern Valley State Prison, where the events at issue occurred. Plaintiff names the following individual defendants:  Warden Biter; Correctional Officer (C/O) Evans; Correctional Counselor Altamarino; John Doe defendants.[1]  Plaintiff claims he was subjected to serious injury in violation of the Eighth Amendment.

On February 9, 2012, Plaintiff was housed on a Sensitive Needs Yard (SNY), when a fight broke out between White and Hispanic inmates.  Plaintiff was suspected of participating in the fight and was placed in Administrative Segregation (AdSeg) on March 4, 2012.  In AdSeg, Plaintiff was housed with inmate Wallace, who knew Plaintiff.  Plaintiff alleged that they "had always gotten along and agreed to be cell-mates."

On March 5, 2012, Plaintiff appeared at an AdSeg Review Hearing before Captain Rimbach.  Plaintiff denied being a participant in the riot and denied that he was a gang member. Plaintiff alleges that Captain Rimbach was hostile to Plaintiff and told Plaintiff that the hearing was just a formality.  On March 7, 2012, Plaintiff was formally charged with willful participation in a riot.

On March 8, 2012, Plaintiff was approached by Defendant Altamarino, who "compelled Plaintiff to sign a CDCR 128 chrono which stated that Plaintiff did not fear for his well-being if put back on the yard he was on."  Altamarino "discussed the contents of the chrono loudly in front of other prisoners."  Plaintiff alleges that he was indeed afraid for his safety.  At an AdSeg placement hearing the same day, Plaintiff explained that he was afraid of other White inmates who would believe he failed to assist them in the riot.  Plaintiff was also afraid of Hispanic prisoners, who would believe he was involved in the fighting against them because of the

---

[1]  Plaintiff is advised that the Court cannot order service upon unidentified defendants.  In order to serve a defendant, Plaintiff must name the individual defendant, describe where that defendant is employed and in what capacity, and explain how that defendant acted under color of state law.

2

disciplinary charge. The chrono was removed from Plaintiff's file. Altamarino, who was present at the hearing, was angered. Plaintiff alleges that Altamarino told him that she "would deal with him later."

On April 17, 2012, Altamarino came to Plaintiff's cell and asked Plaintiff why he wanted the chrono removed from his file. Plaintiff repeatedly asked Altamarino not to discuss the matter in the presence of other inmates. Altamarino told Plaintiff that someone would be around "to deal with this matter soon." Five minutes later, C/O Davis came to Plaintiff's cell and asked him why he was being so difficult with Altamarino. Davis warned Plaintiff that "he should watch his attitude because it could get real bad around here real quick."

The next day, C/O Evans came to Plaintiff's cell to talk to Plaintiff about why he did not want to go to yard. Plaintiff told Evans that he did not want to talk. Evans then threatened him with a cell extraction and removal of all personal property from his cell. Plaintiff complied and was taken to a holding cage in the hallway. Plaintiff explained his concerns to Evans, who laughed at Plaintiff and returned him to his cell.

On April 19, 2012, Correctional Counselor Acebedo came to Plaintiff's cell and said that he wanted to speak with Plaintiff. Plaintiff advised Acebedo that, given the behavior and threats by Altamarino, Davis and Evans, he would only speak to the committee. A few minutes later, Evans came to Plaintiff's cell, "yelling at Plaintiff because Plaintiff told CCI Acebedo that Evans had threatened him. An argument followed and Evans threatened Plaintiff a second time, saying, in part; 'you must not know me.'"

A few hours later, Evans and C/O Davis came to Plaintiff's cell, along with two officers from AdSeg. Plaintiff and his cellmate were advised that a cell search was going to be conducted. Plaintiff's cellmate was placed in a holding cage and Plaintiff was taken to Acebedo. Plaintiff was asked about his safety concerns. Plaintiff told Acebedo about his concerns. Acebedo told Plaintiff that he would be interviewed "more fully" at a later date.

Plaintiff was taken to Lt. Jefferys' office and told that his disciplinary hearing was going to be held. Plaintiff told Lt. Jefferys that he was unable to proceed without his paperwork.

Plaintiff was then taken to a holding cage while his cell was being searched. Plaintiff and his cellmate were then returned to their cell.

Once inside the cell, Plaintiff's cellmate "suddenly, unexpectedly violently attacked Plaintiff as Plaintiff was reaching onto his top bunk to get some papers." Plaintiff was repeatedly hit in the face and torso. The attacked lasted several minutes.

Heflinger returned to take Plaintiff to the hearing, ignoring the obvious injuries that Plaintiff sustained. Lt. Jefferys proceeded with the hearing. Plaintiff explained to Jefferys that he wanted witnesses for the hearing, including the author of the CDCR 115 Rules Violation Report. Lt. Jefferys postponed the hearing.

Immediately after the hearing was postponed, Plaintiff informed C/O Mosqueta that his cellmate had attacked him, causing Plaintiff "numerous injuries." C/O Mosqueta told Plantiff that the only injuries he saw was a little swelling. Plaintiff was able to get Medical Technical Assistant (MTA) Vasquez to do a written report on his injuries. Several officers stood around the cage Plaintiff was placed in while the MTA evaluated Plaintiff. Plaintiff told the officers that he was attacked by his cellmate. A short time later, Evans walked by and told Plaintiff "I told you so." Plaintiff and his cellmate were moved to separate cells.

On April 20, 2012, Plaintiff was taken to a placement hearing where he explained what had happened. Plaintiff requested a single cell, which was denied by Capt. Rimbach. The next day, C/O Phillips offered to give Plaintiff another cellmate. Plaintiff rejected the proposed cellmate. Later on April 21st, a note was passed to Plaintiff through other inmates from Plaintiff's former cellmate. The note explained that Plaintiff's cellmate had attacked him at the request of C/O Evans. The former cellmate mailed a letter to Plaintiff's mother detailing the conduct of Evans, Davis and Hernandez.

On April 23, 2012, Plaintiff was seen by a nurse. The nurse noted that Plaintiff had serious injuries, including blurred vision, neck pain and headaches. On the same day, Plaintiff was interviewed by Sgt. Morales regarding his safety concerns. Plaintiff explained his concerns and his fears of Evans, Davis and his former cellmate. Morales asked Plaintiff why his former

cellmate would attack him.  Plaintiff explained that he did not know, as they had always gotten along.

On April 25, 2012, Investigative Services Unit (ISU) Lt. Stiles and C/O King interviewed Plaintiff about the letter written by Plaintiff's cellmate which they had intercepted.  Plaintiff told both officers that he also had a letter from his former cellmate and gave it to them.

On April 26, 2012, Plaintiff had a committee hearing regarding his safety concerns. Plaintiff asked that he be placed on single cell status.  Warden Biter denied the request.  The committee members asked what the injuries were about.  Before Plaintiff could answer, Sgt. Morales explained that nothing happened between Plaintiff and his former cellmate and that the cellmate asked staff to be separated from Plaintiff.  Plaintiff disputed what Sgt. Morales said. Plaintiff was taken out of the room and returned shortly, where he was told that his term in AdSeg was extended for thirty more days.  Because staff that was involved was present, Plaintiff did not fully explain to the committee what happened.

On May 6, 2012, Plaintiff had his Rules Violation Hearing.  The Hearing Officer, Lt. Stiles, dismissed the charge because the author could not be found.

### B. Eighth Amendment

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  A prisoner seeking relief for an Eighth Amendment violation must show that the officials acted with deliberate indifference to the threat of serious harm or injury to an inmate. Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).  "Deliberate indifference" has both subjective and objective components.  A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference."  Farmer, 511 U.S. at 837.  Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at 847.

Plaintiff's allegations indicate that Defendant Evans directed Plaintiff's cellmate to physically attack him. These allegations are sufficient to state a claim against Defendant Evans under the Eighth Amendment. However, Plaintiff's allegations regarding the remaining defendants are not sufficient.

Regarding Defendant Altamarino, Plaintiff indicates that she threatened him, and that she was upset that Plaintiff did not sign the chrono. Specifically, Plaintiff alleges that Altamarino told Plaintiff that she would "deal with him." Plaintiff does not, however, allege any facts that specifically link Defendant Altamarino with the attack on Plaintiff. Plaintiff concludes that because Altamarino verbally threatened Plaintiff, and he was attacked by his cellmate, Altamarino is therefore liable. This conclusory statement is unsupported by factual allegation. The only specific conduct charged to Altamarino is that she verbally threatened Plaintiff. Allegations of threats and harassment do not state a cognizable claim under 42 U.S.C. § 1983. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(assaultive comments by prison guard not enough to implicate Eighth Amendment); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987)(mere threat does not constitute constitutional wrong). Plaintiff's allegations do not rise to the level of a constitutional violation.

Regarding Warden Biter, the only conduct charged is that he denied Plaintiff's request for single cell status. There are no facts alleged in the complaint that would put Warden Biter on notice that a failure to house Plaintiff in a single cell would subject Plaintiff to a specific risk of harm. A generalized fear of being housed with other inmates is insufficient to state a claim for relief. In order to hold Warden Biter liable, Plaintiff must allege facts indicating the he knew of a specific risk of serious harm to Plaintiff, and acted with deliberate indifference to that risk.

Under section 1983, Plaintiff is required to show that Defendants (1) acted under color of state law, and (2) committed conduct which deprived Plaintiff of a federal right. Hydrick, 500 F.3d at 987. "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Id. at 988 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal

connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff has not linked Defendants Biter or Altamarino to any acts or omissions that violated Plaintiff's federal rights.  Therefore, Plaintiff fails to state claims against them.

### III. Conclusion and Order

Plaintiff's complaint states a claims under the Eighth Amendment against Defendant Evans for failure to protect Plaintiff in violation of the Eighth Amendment.  The complaint does not state any other cognizable claims.  The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward to Plaintiff  one summons and one USM-285 form for completion and return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick, 500 F.3d at 987-88.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554  (2007) (citations omitted).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendant Evans for failure to protect Plaintiff ; and
3. If Plaintiff fails to comply with this order, the Court will recommend that this action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **November 20, 2014**                    **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE